May it please the Court, I am Richard Kiwan, attorney for Appellant Arthur Jeremiah. We ask the Court to reverse the conviction below and dismiss the charges against the Appellant on a number of grounds. First, the sentencing enhancements imposed by the Court violated the Sixth Amendment. The record is clear that on April 1, 2005, the Court remanded the case for proceedings deemed appropriate, citing U.S. v. Booker. Appellant requested a full resentencing based upon the Booker case. The Court below simply conducted a quick-look review and affirmed a sentence imposed without any type of hearing. What you got was what your client got was essentially an amyline hearing before amyline. Right? Essentially, that's how the Court construed it, that it was, in fact, an amyline hearing, but, of course, that is not the case here, because there was certainly no decision by the Court, by this Court, in terms of any of the other issues that were originally raised in the first appeal, and there was definitely no instruction by this Court in terms of, other than simply citing Booker, which still had yet to be totally construed for the Ninth Circuit by the amyline case. There was nothing – there were no instructions. So we would submit, Your Honor, that based upon those facts, the Court below was required to conduct a full resentencing, taking into consideration all of the factors that were identified by Booker in terms of Section 3553 factors to be considered in sentencing, as well as the interpretation of Blakely and Apprendi in terms of how these factors were to be proved by the government and the burden that was to be placed upon the government in terms of handling the resentencing. But the district court simply did not consider that to be the appropriate way to handle the case. And in doing so, we submit that it erred in violation of Mr. Jeremiah's constitutional rights. Now, for example, we've cited the case of United States v. Gunning, which was decided, I think, within a day or so of the remand in which this Court basically reversed where the defendant in Gunning had been denied the right of allocution. It was a case in which the – there was a remand, and there was language in that decision where the Court simply said that, you know, in cases where it may be unclear, you know, or even if – with a limited remand, certainly the Court should consider it as a full – an opportunity to fully consider the issues at sentencing, whether or not they were identified by the remand or not. The order on this case was for such further proceedings as the district court deemed appropriate. Right. And what this Court was doing, we would submit, was simply saying, okay, we think you're smart enough to figure out that Booker has a number of things to say. You should follow that, and we're not going to coach you too much. And I think that perhaps the Court jumped the gun in terms of using an Ameline III type of limited remand in this particular case. Maybe if there was a mistake here, it was the mistake of the Ninth Circuit not to hold this case, hold your client's prior appeal until the Ameline M-Bank was resolved in the mandated issue. Well, your Honor We had, and the judge had done exactly what the district judge did here, there would have been no problem, right? Well, your Honor, if that were, in fact, the scenario, that would be the way it would And I think the reality is that, if recollection serves me correctly, that during the period of time before Ameline III came down, there were a number of panels on this Court which basically applied the teachings of Booker on remand and directed the courts below to do certain things, give the lower sentence because all of the facts had not been proved in terms of Booker, reduce the guidelines, that type of thing. So I don't think it was a mistake, unless you consider all of those cases which this Court sent back down on remand prior to Ameline III and essentially instructed the courts to give the defendant a lower sentence because the requirements of proving the factors in the guidelines had not complied with the Sixth Amendment, which is, after all, the status quo at the time that Booker came down. And Ameline was basically more of a, in that sense, a procedural type of thing in which there was great diversions among the various circuits on how to handle the case. So we would submit, no, the Ninth Circuit did not make a mistake in remanding the case, unless this Court wants to say that all of those other cases which were remanded and which resulted in substantial changes in sentencing were also wrong and it was a mistake. So we would submit that it would be more in the spirit of those cases that this case was remanded. So, again, we would submit that the Court did not, the Court below did not handle the remand in the manner in which it should have been handled. Are you arguing that there's pure Booker error here in the by pure Booker error, I mean, use of the sentencing enhancement not found by the jury? Yes, Your Honor. I believe we are, at least to the extent of the sentencing factors were employed when your client was sentenced, that would be a pure Booker error. Well, it was, it would be a pure Booker error in that sense. But also there's an error we would submit in the sense of the amount of funds that were allegedly or that were the loss as a result of the embezzlement. Clearly, that was something in which the Court apparently used the idea of a, of a sentencing  conduct. In other words, it says that, okay, we have a pre-sentence report in which it says there was $70,000 at least of loss that was incurred based upon solely the pre-sentence report. And that was something that was not alleged in the indictment. Challenged in the written material you submitted, the pre-sentence report. Yes, yes. Did the judge make a finding in the, in the response to your papers that you filed? Well, Your Honor, I wasn't the trial attorney, and I wasn't present at the original sentencing. I believe there were, I believe there were challenges that were made. Certainly, Mr. We've sent for the, it didn't come in the package that we got. Oh, I see. Well, Your Honor, I believe it was challenged originally, but as I wasn't the, the trial counsel, I'm not really a You don't know whether, A, whether it was challenged or, B, whether the Court made any factual findings about the challenge? Your Honor, I believe I'm saying no. Okay. Well, Your Honor, to be frank at this time, I don't know. I'd have to check the record. So, Your Honor, we would also submit that, that in terms of the other type of Booker errors involved in terms of the, we've outlined them in our brief, so we would submit on those points. Now, I'd also like to address briefly the fact that restitution in this particular case was not, was not properly ordered, simply because of the way the case came up. In other words, the charges were basically bank fraud and access device fraud in which the allegations were basically there was an intent to defraud and there was a defrauding of the, of the bank. And, and for example, access device fraud, all you had to do was show, according to the indictment, over $1,000 worth of loss. And yet, that was somehow bootstrapped into both restitution of over $70,000, as well as used, as I pointed out, in terms of coming up with a relevant conduct of over $70,000. I would want to know what, what was the finding and what was presented on that. Well, Your Honor, if I could just sort of make a brief comment on that. Even if, even if it was not clearly objected to at sentencing, we would submit that this would be a case of clear, plain error in light of the constitutional dimensions, as well as the magnitude of the law. So I would submit that that would be the case here. I see that I just have a few seconds left. Is there anything else? Actually, it's running the other way. Well, no. Thank you, counsel. Right. Thank you, Your Honor. Good morning again. May it please the Court. Les Osborne from the District of Hawaii for the United States. Your Honor, I think that the questions the Court was asking Mr. Kuana were specifically addressed at pages 45 and 46 of the government's brief. As I understand the record in this case, the Court indicated that it specifically relied upon the PSR for the determination of the amount and the role of the defendant. And the PSR referred to specific sections of the trial testimony. Of course, the judge had also provided over that trial. But I think there were, and I think the record clearly shows, there were specific, there was, excuse me, specific support for the conclusions reached by the district court, the finding of the $71,000 in loss. As to the procedures that were followed, I'm not sure that the district court should be chastised or reversed for the impression. He followed precisely, the Court followed precisely, the Ameline formula. He solicited written statements by counsel for both the United States and the defendant. After reviewing those statements, the Court concluded that the sentence would be no different simply because the guidelines were now advisory and maintained the sentence previously given. That was clearly within the advisory guidelines range, unless there are any questions from the Court. I just have one question, and this relates to an issue that's discussed in the briefs that was not an argument, and that's the contentions about newly discovered evidence. And in ruling on that, the district court referred to a declaration by the assistant U.S. attorney who tried the case. Are you familiar with that? I know that that's in the record, yes, Your Honor. I don't know that it's in the record that was submitted to the Ninth Circuit because I had nothing to do with the preparation of the excerpt of record. Do you have the declaration with you? I do not, Your Honor. All right. Well, we've made a request for it through other channels. That answers my question. Thank you. Thank you, counsel. Thank you.
judges: Goodwin, Reinhardt, Hawkins